In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-06-00114-CV


______________________________







IN THE INTEREST OF J.G., A CHILD







 


On Appeal from the 76th Judicial District Court


 Titus County, Texas


Trial Court No. 31873




 




Before Morriss, C.J., Carter and Moseley, JJ.


Memorandum Opinion by Chief Justice Morriss



MEMORANDUM OPINION


 J.G., a fourteen-year-old boy, was the subject of a custody proceeding involving his parents
and the State Department of Family and Protective Services (the Department). After a brief hearing, (1)
the trial court honored J.G.'s written request, under Section 153.008 of the Texas Family Code, that
he be placed in the care and custody of a nonparent relative, Torrance Holloman. (2) J.G.'s mother,
Mary Godbolt, was named as possessory conservator with restricted visitation privileges.

 Godbolt appeals, contending that the trial court should not have named the nonparent,
Holloman, as managing conservator because the evidence was insufficient to meet constitutional
standards and was factually and legally insufficient to support a nonparent placement or to support
restricting a natural parent's visitation rights. She assails the court's giving controlling effect to J.G.'s
choice of a managing conservator and responding to J.G.'s choice by what she sees as shifting the
burden of proof onto her shoulders.

 A parent has the right to make decisions concerning the care, custody, and control of his or
her child without unwarranted governmental interference. See Troxel v. Granville, 530 U.S. 57, 65
(2000) (plurality op.) (liberty interest of parents in care, custody, and control of their children is
perhaps oldest of fundamental rights); In re M.W., 959 S.W.2d 661, 665 (Tex. App.--Tyler 1997,
no writ) (right of parent to raise child is essential right); see Goodson v. Castellanos, No. 03-04-00335-CV, 2007 WL 135952, at *8 (Tex. App.--Austin Mar. 1, 2007, no pet. h.). This
constitutional protection is codified in the Texas Family Code, which provides a presumption that
a parent is the proper managing conservator for his or her child. See Tex. Fam. Code Ann. §
153.131(a) (Vernon 2002) (unless court finds that it is not in best interest of child because the
appointment would significantly impair child's physical health or emotional development, court shall
appoint parent as managing conservator; rebuttable presumption that appointment of parents is in
best interest of child).

 That presumption, however, can be rebutted by evidence of blameworthy prior behavior of
the  parent.  In  re  G.R.W.,  191  S.W.3d  896,  900  (Tex.  App.--Texarkana  2006,  no  pet.);  see,
e.g., In re K.R.P., 80 S.W.3d 669, 677 (Tex. App.--Houston [1st Dist.] 2002, pet. denied)
(nonparent approved as managing conservator, where parent had prior convictions, history of family
violence, and smoking in asthmatic child's presence). Even without evidence establishing any
particular blameworthy act of the parent, the parental presumption can be rebutted by other evidence
establishing the statutorily required negative effect on the child. "Because safety, security, and
stability are critical to child development, the danger of uprooting a child may in some instances rise
to a level that significantly impairs the child's emotional development." G.R.W., 191 S.W.3d at 900;
see In re Rodriguez, 940 S.W.2d 265, 270-75 (Tex. App.--San Antonio 1997, writ denied) (parental
presumption rebutted solely by "devastating" effect on child of being removed from only home she
had known).

 For the court to award managing conservatorship to a nonparent under Section 153.131 of
the Texas Family Code, it must be proven by a preponderance of credible evidence that appointing
the parent as a managing conservator would result in serious physical or emotional harm to the child. 
Brook v. Brook, 881 S.W.2d 297, 298 (Tex. 1994); M.W., 959 S.W.2d at 665; see Tex. Fam. Code 
Ann. § 153.131(a). There must be evidence to support a logical inference that some specific,
identifiable behavior or conduct of the parent will probably cause that harm. Chavez v. Chavez, 148
S.W.3d 449, 458 (Tex. App.--El Paso 2004, no pet.); M.W., 959 S.W.2d at 665. Caselaw has
described certain types of acts or omissions which would demonstrate significant impairment of the
child, such as physical abuse, severe neglect, abandonment, drug or alcohol abuse, or immoral
behavior on the part of the parent. M.W., 959 S.W.2d at 666; Thomas v. Thomas, 852 S.W.2d 31,
35-36 (Tex. App.--Waco 1993, no writ).

 A trial court deciding child custody has broad discretion. Pena v. Pena, 8 S.W.3d 639 (Tex.
1999); In re J.R.P., 55 S.W.3d 147, 151 (Tex. App.--Corpus Christi 2001, pet. denied). We are to
review child custody orders under an abuse-of-discretion standard. In re T.J.S., 71 S.W.3d 452, 458
(Tex. App.--Waco 2002, pet. denied); J.R.P., 55 S.W.3d at 151; Turner v. Turner, 47 S.W.3d 761,
763 (Tex. App.--Houston [1st Dist.] 2001, no pet.). Legal and factual sufficiency of the evidence
can be considered in determining whether an abuse of discretion has occurred. In re J.C.K., 143
S.W.3d 131, 135 (Tex. App.--Waco 2004, no pet.); London v. London, 94 S.W.3d 139, 143-44
(Tex. App.--Houston [14th Dist.] 2002, no pet.). An assertion of legal or factual insufficiency of
the evidence is not an independent ground of error, but is considered in an abuse-of-discretion
analysis. Hardin v. Hardin, 161 S.W.3d 14, 19 (Tex. App.--Houston [14th Dist.] 2004, no pet.);
McGuire v. McGuire, 4 S.W.3d 382, 387 n.2 (Tex. App.--Houston [1st Dist.] 1999, no pet.). An
abuse of discretion occurs when the trial court acts "without reference to any guiding rules and
principles" or arbitrarily and unreasonably. City of San Benito v. Rio Grande Valley Gas Co., 109
S.W.3d 750, 757 (Tex. 2003). We view the evidence in the light most favorable to the trial court's
decision and indulge every legal presumption in favor of its judgment. Holley v. Holley, 864 S.W.2d
703, 706 (Tex. App.--Houston [1st Dist.] 1993, writ denied).

 The ultimate question is whether the trial court abused its discretion in removing J.G. from
his mother's home, naming Holloman the managing conservator, and limiting the mother's visitation. 
We affirm the judgment of the trial court because, based on the appellate record before us, we
conclude the trial court did not act without reference to guiding rules and principles or arbitrarily and
unreasonably, and, therefore, it did not abuse its discretion in making its orders. We also hold that
J.G.'s written election need not have been admitted into evidence to be considered by the trial court.

 The October 12, 2006, evidentiary hearing on this case was relatively brief, in part because
of the procedural posture of the case. At that hearing, the Department was not allowed to call
witnesses or to present evidence, due to discovery violations; but the attorney ad litem (3) for J.G.
called Denice Traylor, a Child Protective Services family service worker, as his sole witness. 
Traylor testified that the Department's investigations were triggered by a report of physical neglect
of J.G. and that her investigation, based on her examination of the home's condition, the lack of food
in that home, and her interview with J.G., led her to conclude that J.G. was physically neglected. 
Sua sponte, the trial court truncated Traylor's testimony, stating that the court had heard a number
of proceedings from November 10, 2005, through August 10, 2006, and that the current testimony
duplicated earlier testimony. The court took judicial notice (4) of all of the earlier proceedings.

 Although no live testimony presented at the earlier proceedings has been transcribed and
made a part of this appellate record, and the reporter's record consists solely of the October 12, 2006,
final hearing on custody and the November 9, 2006, hearing on visitation, the clerk's record contains
various official reports and affidavits apparently considered by the trial court and which contain
numerous details on the poor conditions in Godbolt's home. There was ample information before
the trial court to demonstrate that its rulings were within its discretion.

 The other live witness at the October hearing was Godbolt. Much of her testimony was
vague or speculative. She testified that she thought Holloman's house was a dangerous environment
for J.G. and that J.G. did not seem happy and was tired when he visited Godbolt. She testified that
J.G. had shown her his chest--she described his chest as being "puffed out, puffed out from here .
. . he [doesn't] look the same . . . since he has been without his mother." Later, she acknowledged
that there was nothing about that incident to suggest harm to J.G. and disagreed with counsel's
suggestion that perhaps J.G. was showing her the muscles he had developed. She testified that she
thought J.G. was not being treated right and that she had received no telephone calls from him.

 When questioned more closely on why she thought the Holloman house was dangerous and,
specifically, whether she had "seen strange people coming in and out of the house all hours of the
night," she testified, "When I come - I have passed there, like last week, and I saw somebody coming
at his door. I got real concerned. I said, oh, my goodness. They having people coming in and out
of there or just whatever they're doing. My little boy is in school. He's young. He don't know." A
follow-up question asked if she believed there could be drug activities at the house. She answered,
"I could be thinking that. I could be."

 Godbolt's counsel attempted to show that Godbolt believed drugs were being sold at
Holloman's house and that the practice was impairing J.G.'s development. Counsel elicited
testimony that the child's natural father was a felon, and asked Godbolt if she believed "his brother
is also a very immoral man." (5) She did not answer the question, but made the following response:

 When I would be around with Wendell, his brother, he would take my little boy and
put him -- he would say, well, let me let [J.G.] go home with him. I would take a
chance and let him go home with [J.G.]. And then I would find that he had went out
partying and such things. And he's been left there with his uncle, and his uncle at a
time talked real rough to me at a store.


 When asked again if she believed drugs were being sold in the house, she testified, "I would
believe maybe that it might could be. They're not letting [J.G.] know about it, or they're hiding it
from him. Yes, I do." Godbolt testified she believed that J.G. had not had school problems while
with her, and had made the honor roll, but that he had not played football while with Holloman
because J.G. did not make adequate grades in reading. She testified that J.G. had been happy with
her, that he was not happy while with Holloman, and that he was "excessively sick," "broke down,
tore down, not loved like he should, not treated like he should, and not given proper attention like
he should." She also complained because she had seen "big grown men coming out of [the
Holloman] house," apparently implying that they were there for improper purposes. 

 After hearing the testimony, the court stated that it had heard nothing preventing it from
honoring the child's choice (6) of managing conservator and appointed Holloman managing conservator
and Godbolt as possessory conservator. (7)

 Another hearing was held a month later on visitation. Godbolt had asked for visitation after
school and on weekends. The child's attorney ad litem stated at the hearing that the child wanted
visitation to remain as it then was, on Saturday mornings only. Based on that request, the trial court
granted that relief. Godbolt did not appear at the hearing; her attorney stated that Godbolt had called
her offices and said she was sick and did not have transportation. 

 Also, the record before us contains J.G.'s written designation of his preference for who could
choose his place of residence, effectively showing his preference for a managing conservator. The
trial court is statutorily required to give consideration to that designation, but empowered to approve
or disapprove the child's preference. Tex. Fam. Code Ann. § 153.008 (Vernon Supp. 2006). The
clerk's record also contains pleadings and reports filed by the Department and various counselors and
interviewers that were clearly part of the prior proceedings in this matter, of which the trial court
took judicial notice. It is apparent from those reports that Godbolt's parenting efforts were flawed,
that she made insufficient effort to improve them, and that J.G.'s environment under her care was
deplorable. Food was not available for the child, and the house had a number of windows broken
out. The house was infested with vermin to the point that J.G. told an interviewer that the
cereal--kept in the refrigerator with little else--had roaches in it, but that he knew how to shake the
box so the roaches did not come out with the cereal. The filed report also stated that J.G.'s father had
bought him clothes, but that Godbolt sold them, and that J.G.'s father on occasion brought J.G. food,
but at times Godbolt ate it herself or stopped the father from giving it to J.G.

 Godbolt's testimony, on the other hand, provides nothing to actually show that the placement
with Holloman was negative for her son. She provides considerable innuendo and speculation, but
little more, and nothing the trial court was required to believe.

 Thus, even if the trial court was limited to only the record before us, we would find the trial
court's rulings did not abuse its discretion. Plus, the trial court apparently took judicial notice of all
the prior hearings in this matter, which may have included additional live testimony. Thus, we
cannot say that the trial court abused its discretion.

 A significant element in this matter is J.G.'s written designation, filed with the court,
indicating his preference for Holloman to have the exclusive right to designate J.G.'s primary
residence, as authorized by the Texas Family Code. See Tex. Fam. Code Ann. § 153.008. Counsel
argues that the court should not have considered the choice of managing conservator because it was
not formally admitted into evidence. The statute does not require such. It requires the choice to be
made in writing and to be filed with the court. Tex. Fam. Code Ann. § 153.008. Because J.G.'s
preference designation complied with those requirements, the trial court properly considered the
designation.

 We affirm the judgment of the trial court.



 Josh R. Morriss, III

 Chief Justice


Date Submitted: May 2, 2007

Date Decided: June 13, 2007


1. The hearing on this case was relatively brief, largely because of the procedural posture of
the case. Sanctioning the State due to apparent discovery violations, the trial court did not allow the
State to call any witnesses or present any evidence. J.G.'s attorney ad litem presented the evidence.
2. J.G.'s natural father, Wendell Holloman, has not appealed and is not referenced many times
in this appeal: we refer to him as J.G.'s father. Because Torrance Holloman figures prominently in
this appeal, we will for convenience refer to him as Holloman. Torrance Holloman is referenced in
the record variously as a paternal cousin to J.G. and as the brother of J.G.'s natural father--making
him J.G.'s uncle. Though the Court admits to some confusion on Holloman's exact relationship to
J.G., the proper characterization of that relationship is not an issue in this appeal.
3. Godbolt's counsel objected to the attorney ad litem's participation on the basis that he had
no pleadings before the court--arguing that, in the absence of any such pleadings, the proceeding
should be dismissed and J.G. sent home with Godbolt. Counsel pointed out that J.G. was over
twelve years old and had elected a managing conservator in a written document that was part of the
court's file. The court decided that the document also constituted an affirmative pleading by the
child for relief and that the child's personal counsel could proceed based on that request.
4. At the time the trial court's taking judicial notice was discussed, Godbolt objected only that
the Department was properly not allowed to present evidence and that the attorney ad litem had no
pleading in place and therefore should not be allowed to participate in the hearing.
5. Though Holloman was also referenced as a paternal cousin to J.G., this question obviously
was intended to undermine Holloman's fitness to have custody of J.G.
6. The trial court declined to interview J.G. in chambers because it seemed clear to the court
that J.G. desired to stay with his father's cousin. The court also pointed out to Godbolt during the
early portions of her testimony that the only question before the court was whether there was a reason
to disapprove J.G.'s choice of a managing conservator. The Department argues that the trial court
erred in not interviewing J.G. in chambers under Section 153.009(a) of the Texas Family Code. See
Tex. Fam. Code Ann. § 153.009(a) (Vernon Supp. 2006). But there was no application for such an
interview, merely a question posed by the attorney ad litem of whether the trial court "would . . . like
to interview the child." Also, because of our disposition of this case, we need not address that
asserted error.
7. The child's father, Wendell, was also named a possessory conservator with visitation rights. 
Wendell has not appealed.