# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-14-00675-CV

**Agapito Panalez, Jr., Appellant**

**v.**

**Amy Telano, Appellee**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 345TH JUDICIAL DISTRICT
### NO. D-1-FM-08-000824, HONORABLE TIM SULAK, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Pro se appellant Agapito Panalez, Jr. appeals from the trial court's modification order that named Panalez possessory conservator, expanded the geographical area in which the child may live, removed an injunction, and assessed attorney's fees against Panalez. We affirm the order.

### Factual and Procedural Background

Panalez and appellee Amy Telano divorced in 2008, and the trial court signed a divorce decree in accordance with the parties' settlement agreement, naming Panalez and Telano joint managing conservators of their daughter H.T., who was born in August 2006. Telano was given the right to determine H.T.'s primary residence within Travis County and counties contiguous to Travis County.

Since that time, the parties have had numerous disputes related to H.T.'s care and custody, and in 2009, Panalez accused Telano's father and brother of sexually abusing H.T.[1] In early 2010, Panalez again raised allegations of sexual abuse, this time against Christian Sykes, Telano's then-boyfriend.[2] In December 2010, Telano filed a motion to modify, asking that Panalez be required to undergo a psychological evaluation and that his visitations be suspended until that evaluation was complete. Telano asserted that Panalez "forces [H.T.] to make false allegations of sexual abuse and videotapes [H.T.]" making the allegations. Panalez filed a counter-petition asking to have H.T. evaluated by a psychologist and for a temporary restraining order against Sykes. In March 2011, the court signed a modification order requiring that H.T. be seen by a psychologist and expanding the geographical area in which H.T. could live to include Comal County. The order also provided that "if an investigation involving Christian Sykes is open and not dismissed," Telano was enjoined from allowing Sykes to have unsupervised contact with H.T.

Telano and Sykes were married in June 2012, and in mid-2013, Telano filed another motion to modify, seeking to have the injunction against Sykes removed. Panalez demanded a jury[3] and filed a counter-petition, seeking the right to determine H.T.'s primary residence, asking that

---

[1] The allegations against Telano's father and brother were investigated by Child Protective Services, which ruled them out and closed the case.

[2] CPS investigated and ruled out the allegations against Sykes. The police also investigated and found no reason to pursue the case, resulting in the case being "suspended" in 2012.

[3] *See* Tex. Fam. Code § 105.002 (party may demand jury in suit affecting parent-child relationship, and trial court "may not contravene" jury's verdict on issues of conservatorship, whether to impose geographical restriction, and what such restriction should be); *Lenz v. Lenz*, 79 S.W.3d 10, 16-17 (Tex. 2002) (discussing application of section 105.002 following jury trial on modification and geographical restriction).

H.T.'s residence be restricted to Travis County and contiguous counties, and asking that Sykes be barred from having unsupervised access to H.T. In June 2014, the case was heard by a jury, which determined that Telano should be named sole managing conservator and that the geographical restriction should be expanded to allow Telano to establish H.T.'s residence in Jefferson County, Comal County, Travis County, or a county contiguous to Travis County. The trial court signed an order naming Panalez possessory conservator, naming Telano sole managing conservator, expanding the area in which H.T. may live to include Jefferson County, removing the injunction against Sykes, and awarding to Telano $43,951 in attorney's fees to be paid as "additional child support" at a rate of $200 a month. Panalez filed a motion for new trial, arguing that the evidence was insufficient to support Telano being appointed sole managing conservator and the geographical restriction being expanded, and a motion to modify, asserting discrepancies between the signed order and the trial court's statements in open court.

Panalez raises four issues on appeal, asserting that the trial court erred in (1) dissolving the injunction against Sykes; (2) entering a judgment conforming with the jury's decision and expanding the geographical restrictions on H.T.'s residence; (3) awarding attorney's fees; and (4) entering an order that was inconsistent with its statements made immediately following the jury's verdict.[4]

---

[4] Panalez's arguments are very short and contain few, if any, citations to authority. He generally simply asserts that the trial court or jury ignored certain evidence without providing further explanation or discussion. Although we will read Panalez's pro se briefing liberally, we may not give him any procedural advantage over a party represented by counsel. *See Mansfield State Bank v. Cohn*, 573 S.W.2d 181, 184-85 (Tex. 1978); *In re N.E.B.*, 251 S.W.3d 211, 211-12 (Tex. App.—Dallas 2008, no pet.).

## Standard of Review

A trial court may modify conservatorship and possession if the petitioning parent shows that the circumstances of the child, a conservator, or some other affected party have materially and substantially changed and that modification would be in the child's best interest.[5] Tex. Fam. Code § 156.101. In the case at hand, the jury determined that Telano should be named sole managing conservator and that she should be allowed to move to Jefferson County, while the trial court determined that the injunction related to Sykes should be dissolved.

When issues of conservatorship and geographical restrictions are submitted to a jury, we conduct an ordinary sufficiency review to determine whether the verdict is supported by legally and factually sufficient evidence. *See Lenz v. Lenz*, 79 S.W.3d 10, 16-17 (Tex. 2002). We consider reasons for and against allowing a custodial parent to move, such as effects on the child's extended family relationships and on visitation and communication with the non-custodial parent; the possibility of a visitation schedule to allow the non-custodial parent to continue to have a meaningful relationship with his child; the nature of the child's existing contact with her parents; and the child's age, community ties, and health and educational needs. *See Fox v. Fox*, No. 03-04-00749-CV, 2006 WL 66473, at *4 (Tex. App.—Austin Jan. 13, 2006, no pet.) (mem. op.) (citing *Lenz*, 79 S.W.3d at 15-17).

In reviewing legal sufficiency, we consider all of the evidence in the light most favorable to the verdict, crediting favorable evidence if a reasonable juror could do so and

---

[5] Nowhere in his briefing does Panalez argue that the parties' and H.T.'s circumstances have not materially and substantially changed. He seems to argue only that the modifications made were not in H.T.'s best interest.

disregarding contrary evidence unless a reasonable juror could not. *In re D.A.*, 307 S.W.3d 556, 561 (Tex. App.—Dallas 2010, no pet.) (citing *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005)). Evidence is legally insufficient only when the evidence establishing a vital fact is so weak that it does no more than create a mere surmise or suspicion. *Id*. (quoting *Kroger Tex. Ltd. P'ship v. Suberu*, 216 S.W.3d 788, 793 (Tex. 2006)). When reviewing factual sufficiency, we examine all of the evidence and set aside a determination only if it is so contrary to the evidence as to be clearly wrong and unjust. *Id*. The jury, as fact-finder, is the sole judge of witness credibility and the weight to be given to the testimony, and we may not substitute our judgment on such issues for that of the jury. *Id*.; *see Coburn v. Moreland*, 433 S.W.3d 809, 823-24 (Tex. App.—Austin 2014, no pet.) (fact-finder observes and assesses witness demeanor and may sense influences "'that may not be apparent from merely reading the record on appeal'" (quoting *In re A.L.E.*, 279 S.W.3d 424, 427 (Tex. App.—Houston [14th Dist.] 2009, no pet.))).

When a trial court makes a decision modifying a conservatorship order, we review that decision under an abuse-of-discretion standard. *Gillespie v. Gillespie*, 644 S.W.2d 449, 451 (Tex. 1982); *Zeifman v. Michels*, 212 S.W.3d 582, 587 (Tex. App.—Austin 2006, pet. denied). The trial court observes the witnesses' demeanor and personalities and does not abuse its discretion if some substantive and probative evidence supports the decision. *Zeifman*, 212 S.W.3d at 587. In such cases, challenges to the sufficiency of the evidence are not independent grounds of error, but instead are relevant when assessing whether the trial court abused its discretion. *Id*. We ask first whether the court had sufficient information on which to exercise its discretion and second whether it erred in applying its discretion. *Id.* at 588.

**Discussion**

In his first issue, Panalez argues that the trial court erred in removing the injunction barring Sykes from having unsupervised contact with H.T., pointing to Detective Lopez's testimony that, because of H.T.'s age at the time of the allegations, she was placed in play therapy, and H.T.'s therapist's testimony that not every child who is sexually abused shows symptoms of the abuse. He asserts that the trial court "ignored this evidence" and placed H.T. at risk by removing the injunction. We disagree.[6]

Panalez testified that H.T. told him that Sykes had "poked [her] in the vagina." Sykes denied the accusation, as did Telano, who testified that because of Panalez's earlier allegations against her father and brother, she "made a point of not ever . . . leaving [H.T. and Sykes] alone together in any way." CPS caseworker Shunta Robinson-Tennon testified that she investigated the allegations against Sykes and ruled them out. She said, "I interviewed the mother and I interviewed the child. And the child didn't make any outcry of sexual abuse, and she stated that her dad told her to say that [Sykes]—at the time, [Sykes] touched her there."[7]

---

[6] Telano argues that Panalez waived this issue by not raising it before the trial court. *See* Tex. R. App. P. 33.1(a) (generally, complaining party must show that complaint was timely and sufficiently raised before trial court and that court ruled on complaint or refused to rule and that complaining party objected to refusal to rule). Nowhere in Panalez's motion for new trial or motion to modify the judgment did he argue that the lifting of the injunction was an abuse of discretion. However, a complaint about the sufficiency of the evidence in a nonjury case may be raised for the first time on appeal, *id*. R. 33.1(d), and the issue in question was decided by the trial court and not the jury. Liberally construing Panalez's brief, we will address the issue as challenging the sufficiency of the evidence underlying the trial court's decision.

[7] At the time Panalez told CPS that Sykes had abused H.T., he also apparently alleged that Sykes had sexually abused Sykes's niece, G., who was almost five at the time. Robinson-Tennon testified that another CPS caseworker investigated the allegations related to G. and interviewed Sykes as part of that investigation. The allegations related to G. were also ruled out.

Detective Ramon Lopez of the Travis County Sheriff's Office also investigated Panalez's allegations against Sykes and said that Panalez provided an audio-recording of him and his mother talking to H.T. Lopez testified that he listened to the tape and concluded that Panalez had asked H.T. leading questions. Lopez discussed the case with the district attorney's office, which decided in 2012 to suspend the case. Lopez explained:

> We have allegations by a child that was on a recording, that a certain individual may have touched her. With that said, after listening to it, the child was preverbal, and by that I mean the child wouldn't have been able to participate in a full forensic interview. So—which is why she was put in—the case was suspended. Once a case is suspended, in this particular case, it was noted that she—the child would—the case would be suspended pending any further leads or outcries from the child. And to—and had that happened—the child is with the therapist. The therapist is bound by law to make law enforcement aware of this particular outcry. And at that point, the case would—we would open this case up again and go forward with it.

H.T.'s therapist, who has been seeing her since October 2011, testified that H.T. is a happy child who has not made an outcry to him. He said H.T. did not show "signs of anxiety, some trauma—signs of trauma, some nightmares, some hesitancy to engage with others," but acknowledged that not every victim of sexual abuse shows symptoms.

The evidence shows that H.T. exhibits no signs of having been abused, is happy and well-adjusted, and has made no outcries of abuse other than the alleged outcry to Panalez. There is no evidence that H.T. behaves as if she fears Sykes, who is now her stepfather. Further, H.T. told a CPS investigator that Panalez had told her to say that Sykes had touched her inappropriately; a CPS investigator ruled out the allegations against Sykes; Panalez made similar allegations against

7

Telano's father and brother, which were also investigated and ruled out by CPS; and the police investigation was suspended because there was insufficient evidence to continue investigating Sykes.

It was for the trial court to consider the credibility of the witnesses and the weight to be given their testimony on the issue of the injunction against Sykes. *See Coburn*, 433 S.W.3d at 823-24; *Schneider v. Schneider*, 5 S.W.3d 925, 931 (Tex. App.—Austin 1999, no pet.) (even if there is conflicting evidence, fact-finder's resolution of evidentiary conflicts and determination of credibility and weight to be given testimony "is generally regarded as conclusive"). Sufficient probative and substantial evidence supports the trial court's decision, and Panalez has not shown that the court erred in the application of its discretion. *See Zeifman*, 212 S.W.3d at 588. We overrule Panalez's first issue.

In his second issue, Panalez asserts that the jury erred in expanding the area in which Telano is allowed to live to include Jefferson County and argues that the trial court improperly "ignored" the fact that it earlier denied a request to expand the geographical restriction (at the time it enjoined Sykes from having unsupervised contact with H.T.). He asserts that the expansion of the geographical restriction adversely affected H.T.'s best interest.

Telano, Sykes, and several other witnesses testified about Telano's and Sykes's friends and family in Jefferson County. Telano and Sykes grew up in Beaumont, and Sykes's sister is Telano's best friend from childhood. Sykes's house is near Beaumont and 230 miles from Panalez's residence. The house, which Sykes owns outright, is on a fifteen-acre farm and has been in Sykes's family for three generations. There was testimony that having a greater distance between Telano and Panalez could ease some of the tension between them, thus decreasing stress on H.T., and her

8

therapist believed H.T. would adapt to the long-distance visitation schedule. Sykes testified that he has an easier time finding work in the Houston area than in Austin or San Antonio, and Telano said she has several employment options in the Beaumont area. Telano also explained that living in Jefferson County would allow her and Sykes to consolidate households into a house that is paid off. Telano and others testified that she has friends and family in the area who would be a support system for her and H.T., and she testified that H.T. would be attending good schools in the Beaumont area. There was discussion of how a visitation schedule could be tailored to give H.T. extended time with Panalez in the summers and on many long school breaks and to allow H.T. to attend family reunions on both sides of her family. Further, Telano said that she and her parents were willing to drive H.T. more than half-way to Panalez's residence and that H.T. is already accustomed to reasonably long drives. Panalez has not shown that the jury's decision to expand the geographical restriction to include Jefferson County was supported by insufficient evidence or would not be in H.T.'s best interest. *See In re D.A.*, 307 S.W.3d at 561. We overrule Panalez's second issue on appeal.

In his third issue, Panalez argues that the trial court abused its discretion in awarding attorney's fees to Telano because Telano's petition sought a modification of the custody arrangements and was not brought for purposes of enforcing child support.[8] Telano argues that

---

[8] Panalez does not attack the evidence proving the amount of attorney's fees but rather its inclusion as additional child support. His argument on this issue, in its entirety, is as follows:

> The evidence presented at trial showed that Appellee's petition was not for the enforcement of child support. Because Tex. Fam. Code 106.001 and 106.002 clearly state that attorney fees are expenses that may be enforced in the attorney's name by any means available for the enforcement of a judgment for debt, an order for garnishment should not have been entered. Because the trial court ignored this statute, it abused its discretion and adversely affected the Appellant.

9

Panalez has waived this issue by his failure to raise it before the trial court in his motions to modify and for new trial. We agree. Nowhere before the trial court did Panalez raise the issue of attorney's fees in any respect other than when his attorney asked that he be allowed to pay them off at a rate of $150 a month instead of $200 a month. We overrule Panalez's third issue on appeal.[9]

Finally, in his fourth issue, Panalez argues that the trial court's signed order is inconsistent with rulings it made in open court. Panalez complains about the provision giving him possession "on the first Monday following the end of the school year until June 16th," which he asserts will result in his never having two full weeks because the school year ends the first week of June. He also points to the trial court's statement that Panalez would have "first, third, and fifth weekends, and then two weeks per month during the summer breaks between school, as well as the usual and customary arrangements for parties living more than a hundred miles apart with regard to

---

[9] Further, although the supreme court has held that in a pure modification proceeding, attorney's fees may not be characterized as additional child support, *see Tucker v. Thomas*, 419 S.W.3d 292, 300 (Tex. 2013), whether they can be so characterized in a "blended" proceeding involving both modification and enforcement was not decided, *see id*. at 305 (Guzman, J., concurring) ("Considering the inextricability of modification and enforcement issues in many SAPCR proceedings, it follows that trial courts placed in such circumstances would maintain similar discretion to award attorney's fees as child support. On the facts of this case the Court need not decide whether attorney's fees can be taxed as child support in these blended proceedings. But such proceedings are likely the source of conflicting case law among the courts of appeals."). Telano argues that this proceeding can be viewed as a "blended" modification and enforcement proceeding, and the record supports that assertion. In Telano's proposed disposition of other issues, she asked that Panalez be held in contempt for violating prior trial court orders "as indicated in the Motion for Enforcement"; the parties provided testimony about Panalez's alleged violations of the trial court's custody orders; and on the same day the court signed the modification order, it also signed an order of enforcement by contempt finding that Panalez had failed to return H.T. on time after a weekend visit. We need not decide this issue, however, because Panalez never raised it before the trial court.

recognized holidays, birthdays, Father's Day, Mother's Day, etcetera,"[10] and asserts that the signed order is inconsistent with that statement. He neglects to note that Telano then requested alternating spring breaks, and the court responded, "I am going to allow Mr. Panalez spring vacation in even-numbered years."

Thus, the order signed by the trial court is not inconsistent with its statements in open court. We will instead consider whether the order's provisions related to spring break and June visitations were an abuse of discretion. *In re A.D.*, No. 14-12-00914-CV, 2014 WL 1800082, at *13 (Tex. App.—Houston [14th Dist.] May 6, 2014, no pet.) (departure from standard visitation order is reviewed for abuse of discretion). Although there is a presumption in favor of the standard possession order, Tex. Fam. Code § 153.252 (rebuttable presumptions that standard order is in child's best interest and provides "reasonable minimum possession"), the trial court may depart from the standard order based on the child's age, development, circumstances, needs, and best interest; the parents' circumstances; and any other relevant factor, *id.* § 153.256.

The parties agreed to depart from the standard order by breaking Panalez's summer visitation into three periods of approximately two weeks each in order to allow H.T. to attend both family reunions,[11] and the trial court could have determined that arranging Panalez's June visitation as it did was the best way to accommodate all of the competing interests and was in H.T.'s best

---

[10] The standard possession order for parents living more than 100 miles apart provides that the non-custodial parent has visitation every spring break. *See* Tex. Fam. Code § 153.313(2).

[11] The parties discussed how to arrange visitation so that H.T. could attend both Panalez's family reunion, which always occurs on Memorial Day weekend, and Telano's family reunion, which always occurs the first weekend in July. Telano noted that Memorial Day weekend was her weekend, and the parties agreed when the trial court proposed giving Panalez every Memorial Day weekend and Telano every first weekend in July.

11

interest.  Similarly, having heard all of the evidence provided at trial, the court could have concluded that it was in H.T.'s best interest and would best accommodate the parties' competing wishes and needs for Telano and Panalez to alternate spring break possession.  Assuming that the issue was preserved for our review, Panalez has not shown that the trial court abused its discretion in deviating from the standard possession order.  *See Strong v. Strong*, 350 S.W.3d 759, 765 (Tex. App.—Dallas 2011, pet. denied) (when trial court does not enter findings of fact, it is implied that court made all necessary findings to support order, and order will be upheld on any legal theory supported by evidence); *In re T.J.S.*, 71 S.W.3d 452, 458-59 (Tex. App.—Waco 2002, pet. denied) (if parties do not request trial court's specific reasons for departing from standard possession order, appellate court infers that trial court made all necessary findings to support judgment, reviews record to ensure some evidence supports judgment, considers evidence in light favorable to judgment, and upholds judgment on any legal theory supported by evidence).  We overrule Panalez's fourth issue.

### Conclusion

Having overruled Panalez's issues, we affirm the trial court's modification order.

_____

David Puryear, Justice

Before Justices Puryear, Goodwin, and Bourland

Affirmed

Filed:  November 19, 2015

12