**Affirmed and Opinion filed June 9, 2016.**



In The

# Fourteenth Court of Appeals

---

### NO. 14-14-00799-CV

---

## IN THE INTEREST OF P.A.C AND K.V.C., CHILDREN

---

**On Appeal from the 309th District Court
Harris County, Texas
Trial Court Cause No. 2013-17788**

---

## O P I N I O N

Appellant Marisa Lawcasey appeals a final order modifying the parent-child relationship. Marisa contends that the evidence is legally and factually insufficient to support the jury's verdict. She also contends that the trial court abused its discretion by (1) awarding certain rights exclusively to appellee Daniel Casey; (2) limiting Marisa's periods of possession; and (3) ordering that her periods of visitation be supervised. We affirm.

## BACKGROUND

Marisa and Daniel divorced in Montgomery County on May 10, 2012. Marisa and Daniel were appointed joint managing conservators of their two children, P.A.C. and K.V.C.

In the final decree of divorce, both parents were given the joint right to consent to the children's marriages and to represent them in legal actions. Daniel was awarded the exclusive right to designate the primary residence of the children. The trial court further ordered that Marisa's access to the children be supervised through July 31, 2012, or until Marisa completed a psychological evaluation, whichever occurred later. Assuming Marisa completed the psychological evaluation and assuming Daniel did not show good cause to continue Marisa's supervised visitation, the order provided that Marisa's possession and access to the children would "step up" to a standard possession order beginning August 1, 2012.

The trial court held several hearings in August 2012, and signed an order modifying the parent-child relationship on October 4, 2012. The trial court found that Daniel had shown good cause for the court to continue the order requiring supervision of Marisa's possession and access to the children. All other orders from the original decree remained in effect.

The case was transferred to Harris County — where Daniel and the children resided — in March 2013. Daniel remarried in June 2013.

During 2013 and early 2014, both Daniel and Marisa filed original and amended petitions to modify the parent-child relationship. Marisa sought a standard possession order and requested that she be appointed the conservator with the right to designate the primary residence of the children. Daniel requested that

he be appointed sole managing conservator of the children and that Marisa's visitation and possession periods continue to be supervised.

The case was tried to a jury in May and June 2014. The jury found that Marisa should not be named as the conservator with the exclusive right to designate the primary residence of the children, but also found that the joint managing conservatorship should not be replaced by appointing Daniel as the sole managing conservator of the children.

In its final order modifying the parent-child relationship signed July 23, 2014, the trial court ordered that Daniel and Marisa remain joint managing conservators. The trial court ordered that Daniel remain as the conservator with the exclusive right to designate the primary residence of the children, but also awarded Daniel the exclusive right to consent to the children's marriages and to represent them in legal actions. The trial court ordered that Marisa's possession of and access to the children continue to be supervised, but provided that possession and access would "step up" to a modified standard possession order if Marisa complied with court-ordered psychological counseling and did not violate the court's order.

This appeal followed.

## STANDARD OF REVIEW

In her first issue, Marisa challenges the legal and factual sufficiency of the evidence supporting the jury's verdict. In her second and third issues, Marisa contends the trial court's final order modifying the parent-child relationship constituted an abuse of discretion.

A jury's findings underlying a conservatorship decision are subject to ordinary legal- and factual-sufficiency review. *Arredondo v. Betancourt*, 383

S.W.3d 730, 734 (Tex. App.—Houston [14th Dist.] 2012, no pet.). In a legal-sufficiency review, we view the evidence in a light favorable to the finding, crediting favorable evidence if a reasonable fact finder could, and disregarding contrary evidence unless a reasonable fact finder could not. *City of Keller v. Wilson*, 168 S.W.3d 802, 822, 827 (Tex. 2005). In a factual-sufficiency review, we examine the entire record and set aside a jury's finding only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *In re T.T.*, 228 S.W.3d 312, 316 (Tex. App.—Houston [14th Dist.] 2007, pet. denied). In conducting our review of both the legal and factual sufficiency of the evidence, we are mindful that the jury, as fact finder, was the sole judge of the credibility of the witnesses and the weight to be given their testimony. *City of Keller*, 168 S.W.3d at 819; *In re T.T.*, 228 S.W.3d at 316. We may not substitute our judgment for the fact finder's, even if we would reach a different answer on the evidence. *See Maritime Overseas Corp. v. Ellis*, 971 S.W.2d 402, 407 (Tex. 1998); *In re T.T.*, 228 S.W.3d at 316.

Because a trial court has broad discretion to decide the best interest of a child in family-law matters such as custody, visitation, and possession, we review a trial court's order modifying conservatorship for an abuse of discretion. *Arredondo*, 383 S.W.3d at 734; *Flowers v. Flowers*, 407 S.W.3d 452, 457 (Tex. App.—Houston [14th Dist.] 2013, no pet.). A trial court abuses its discretion when it acts arbitrarily or unreasonably, or when it clearly fails to correctly analyze or apply the law. *Arredondo*, 383 S.W.3d at 734. There is no abuse of discretion as long as there exists some evidence of a substantive and probative character to support the trial court's decision. *Baltzer v. Medina*, 240 S.W.3d 469, 475 (Tex. App.—Houston [14th Dist.] 2007, no pet.).

4

## I.      Legal and Factual Sufficiency

In her first issue, Marisa contends that the evidence is legally and factually insufficient to support the jury's verdict denying Marisa sole managing conservatorship of the children.

Marisa did not request in her pleadings that she be appointed sole managing conservator, nor was any question submitted to the jury regarding whether she should be appointed sole managing conservator. Instead, the jury was asked only whether Marisa should be granted the exclusive right to designate the children's primary residence, and, if not, whether Daniel should be appointed sole managing conservator. Accordingly, because Marisa did not plead for such relief, request a jury question on the issue, or object to the absence of such a question from the charge, she has waived the issue on appeal. *See* Tex. R. Civ. P. 279 (any issues excluded from the charge that are "not conclusively established under the evidence and no element of which is submitted or requested are waived").[1]

---

[1] Marisa filed a supplemental letter brief asking this court to construe her first issue as a challenge to the jury's finding that she should not be named as the conservator with the exclusive right to designate the primary residence of the children. We decline to do so. *See Bartlett v. Bartlett*, 465 S.W.3d 745, 751 (Tex. App.—Houston [14th Dist.] 2015, no pet.); *Priddy v. Rawson*, 282 S.W.3d 588, 597 (Tex. App.—Houston [14th Dist.] 2009, pet. denied).

Even if we were to construe Marisa's first issue as she requests, we nevertheless would determine that the evidence supports the jury's verdict. To prevail on her petition to modify the parent-child relationship, Marisa bore the burden of establishing that (1) modification was in the children's best interest, and (2) the circumstances of the children, a conservator, or another party affected by the order had materially and substantially changed. *See* Tex. Fam. Code Ann. § 156.101(a)(1)(A) (Vernon 2014); *Arredondo*, 383 S.W.3d at 734. For the same reasons discussed in detail in section III, *infra*, the record contains substantial evidence that it is in the children's best interest for Daniel to have the exclusive right to designate the children's primary residence. Accordingly, the evidence is legally and factually sufficient to support the jury's decision rejecting Marisa's request that she be designated as the conservator with the exclusive right to designate the primary residence of the children. *See Lenz v. Lenz*, 79 S.W.3d 10, 17 (Tex. 2002) ("[W]e view the evidence produced relevant to the best-interest factors in a light that

Marisa's first issue is overruled.

## II. Award of Certain Exclusive Rights to Daniel

In her second issue, Marisa contends that the trial court abused its discretion by awarding Daniel the exclusive rights to consent to the children's marriages and to represent the children in legal actions "where no such relief had been pled by [Daniel]."

The Texas Rules of Civil Procedure applicable to the filing of an original lawsuit apply to a suit for modification under the Texas Family Code. Tex. Fam. Code Ann. § 156.004 (Vernon 2014). Therefore, a trial court's judgment must conform to the pleadings, or to issues not raised by the pleadings but tried by express or implied consent of the parties. *See* Tex. R. Civ. P. 67, 301; *Flowers*, 407 S.W.3d at 457.

In his petition to modify the parent-child relationship, Daniel requested that he be appointed the sole managing conservator of the children. Daniel did not explicitly request that he be granted the exclusive right to consent to the children's marriages or the exclusive right to represent the children in legal actions.

The jury determined that the joint managing conservatorship of the children should not be replaced by appointing Daniel as the sole managing conservator. In line with the jury's verdict and as required by statute,[2] the trial court's final order modifying the parent-child relationship appointed Daniel and Marisa as joint managing conservators of the children, but awarded Daniel the exclusive rights

tends to support the jury's verdict.").

[2] *See* Tex. Fam. Code Ann. § 105.002(c)(1)(B) (Vernon 2014) ("the court may not contravene a jury verdict on . . . the appointment of joint managing conservators").

(with notice to Marisa) to consent to the children's marriages and to represent the children in legal actions.[3]

Although Daniel did not specifically request the exclusive rights to consent to the children's marriages and to represent the children in legal actions, he did request to be appointed sole managing conservator of the children. Section 153.132 of the Texas Family Code lists the exclusive rights belonging to a sole managing conservator absent limitation by a court order, and includes "the right to consent to marriage" and "the right to represent the child in legal action." Tex. Fam. Code Ann. § 153.132(5), (6) (Vernon 2014). Daniel's request that he be appointed sole managing conservator of the children therefore encompassed a request that he be awarded the exclusive rights to consent to the children's marriages and to represent the children in legal action. *See id.* Accordingly, we conclude that Daniel requested that he be awarded those rights in his petition, and the trial court's final order awarding those rights exclusively to Daniel conformed to the pleadings and was not an abuse of discretion. *See Flowers*, 407 S.W.3d at 460 ("In her petition [to modify the parent-child relationship], though Lacey did not specifically request that the trial court add the Restriction, she did request broader relief that encompasses adding the Restriction. We conclude that Lacey requested this relief in her petition, and that, as to adding the Restriction, the final order conformed to the pleadings."); *see also* Tex. Fam. Code Ann. § 101.016 (Vernon 2014) ("'Joint managing conservatorship' means the sharing of the rights and duties of a parent by two parties, ordinarily the parents, even if the exclusive right to make certain decisions may be awarded to one party.").

---

[3] *See* Tex. Fam. Code Ann. § 105.002(c)(2)(C) (Vernon 2014) ("the court may not submit to the jury questions on the issues of . . . any right or duty of a conservator, other than the determination of which joint managing conservator has the exclusive right to designate the primary residence of the children . . .").

Marisa's second issue is overruled.

## III.    Limited Possession and Supervised Visitation

In her third issue, Marisa contends that the trial court abused its discretion in deviating from the standard possession order by limiting Marisa's periods of possession and ordering that her periods of visitation be supervised.[4]

A child's best interest is always the primary consideration of the court in determining issues of possession and access.  Tex. Fam. Code Ann. § 153.002 (Vernon 2014).  A trial court may modify the provisions of the divorce decree that provide the terms and conditions of conservatorship or that provide for the possession of or access to a child, if modification would (1) be in the best interest of the child, and (2) the circumstances of the child, a conservator, or other party affected by the order have materially and substantially changed since the rendition date of the divorce decree.  *See id.* § 156.101(a)(1)(A) (Vernon 2014); *Flowers*, 407 S.W.3d at 456.

There is a rebuttable presumption that a standard possession order is in the best interest of a child and provides reasonable minimum possession of a child for a parent named as a joint managing conservator.  Tex. Fam. Code Ann. § 153.252 (Vernon 2014).  "However, a trial court is permitted to place conditions on a parent's access, such as supervised visitation, if necessary for the child's best interest . . . ." *Hinojosa v. Hinojosa*, No. 14-11-00989-CV, 2013 WL 1437718, at

---

[4] The July 23, 2014 final order provided for four "step-up periods of possession" for Marisa.  The order provided that Marisa would initially have supervised visitation through the SAFE Supervised Visitation Program for several hours on Wednesdays and on Saturdays following the first, third, and fifth Fridays of each month.  The order also required Marisa to attend weekly psychological counseling with a court-appointed psychologist.  After approximately one year of compliance, the order provided for unsupervised visitation of increasing duration and was set to step-up to what essentially amounted to a standard possession order beginning November 1, 2015.

*6 (Tex. App.—Houston [14th Dist.] Apr. 9, 2013, no pet.) (mem. op.); *see also* Tex. Fam. Code Ann. § 153.193 (Vernon 2014) (terms of an order restricting or limiting a parent's right to possession of or access to a child must not exceed those required to protect the best interest of the child).

In its final order, the trial court stated: "The Court further finds that the presumption that a standard possession order is in the best interest of the children has been rebutted and that the circumstances of the children and of the joint managing conservators makes entry of a Standard Possession Order in accordance with section 153.001 unworkable and inappropriate." Marisa did not request, and the trial court did not make, findings as to why the final order deviated from a standard possession order. *See* Tex. Fam. Code Ann. § 153.258 (Vernon 2014) (where possession varies from the standard possession order, then on timely written or oral request "the court shall state in the order the specific reasons for the variance from the standard order").

We apply the same standard of review when a party fails to request specific reasons for the variance under section 153.258 as when a party fails to make a request for findings of fact under Texas Rules of Civil Procedure 296 through 299. *Niskar v. Niskar*, 136 S.W.3d 749, 754 (Tex. App.—Dallas 2004, no pet.); *In re T.J.S.*, 71 S.W.3d 452, 459 (Tex. App.—Waco 2002, pet. denied). Accordingly, it is implied that the trial court made all findings necessary to support its judgment. *Worford v. Stamper*, 801 S.W.2d 108, 109 (Tex. 1990). We review the record to determine whether some evidence supports the judgment and the implied findings, only considering the evidence most favorable to the judgment and upholding the judgment on any legal theory supported by the evidence. *Id.*; *Niskar*, 136 S.W.3d at 753-54; *In re T.J.S.*, 71 S.W.3d at 459.

Evidence at trial established that Marisa had repeatedly violated the court's prior orders prohibiting her from initiating direct non-written communication with Daniel. When exchanging the children, Marisa attempted on many occasions to question Daniel in a hostile manner in front of the children and in direct contravention of the court's order. This disregard for the court's orders did not cease before the trial — Daniel testified that Marisa confronted him on the third day of trial, yelling his name at him as he was walking into the courtroom. During trial, Marisa admitted that she had violated the court's orders regarding communication and expressed the sentiment that she need not follow the court's orders if she disagreed with them.[5]

Moreover, there was other evidence that Marisa engaged in actions that were not in the children's best interest. Daniel testified that Marisa refused to shift her visitation times to accommodate the children's schedules on several occasions. Marisa admitted that her refusal to change a visitation period so that her son could attend a birthday party was not in her son's best interest.

Testimony from other witnesses also could support the trial court's decision. The executive director of Access Builds Children (ABC) — a supervised visitation program that initially supervised Marisa's visits with the children in 2012 — testified that ABC dismissed Marisa as a result of altercations between Marisa and ABC staff and Marisa's inability to comply with ABC rules. The ABC director

---

[5] Evidence also demonstrated that Marisa violated other court orders. Marisa admitted that on one occasion she kept her son's homework (in contravention of the court's orders) that he needed to study for a test — an action she admitted was not in her son's best interest. Daniel testified that during one of her periods of unsupervised visitation Marisa took their daughter to get the daughter's ears pierced without notifying Daniel or discussing it with him, even though Daniel was the parent with the exclusive right to consent to medical and surgical treatment involving invasive procedures.

testified that she was concerned for the children while they were in Marisa's presence due to Marisa's behavior.

Dr. Kit Harrison, a psychologist, testified that he was requested by the trial court to do a neuropsychological evaluation of Marisa in July 2012. Dr. Harrison diagnosed Marisa with major depressive disorder, with evidence of "some very mild psychotic features associated with her depression." Dr. Harrison also diagnosed Marisa with obsessive compulsive personality disorder (OCPD), which he described as "disabling, prolonged," and "disruptive to self and others." Dr. Harrison testified that individuals with OCPD are "in front of the judge a lot. They're not going to follow the rule unless it flows elegantly. And so the therapy becomes not giving up and trying to get them reoriented to why it's important to follow rules like divorce rules."

A professional counselor who conducted therapeutic visits between Marisa and the children testified that when the children mentioned Daniel or Daniel's wife, Marisa would exhibit agitation. She further testified that she witnessed a confrontation between Marisa and Daniel where Marisa referred to Daniel as "ungodly" in front of the children. The counselor testified that there was a confrontation between Marisa and the counselor's staff that caused the counselor to express some concern about potential psychiatric issues or mental health issues with Marisa. The counselor testified that if Marisa was continuing to have problems controlling her emotions around Daniel or Daniel's wife, and was continuing to degrade Daniel, that those actions were not in the children's best interest. The counselor also testified that she believed some of Marisa's emails and text messages to the children were not appropriate, and that those messages raised a concern as to how Marisa was acting when she was alone with the children.

Marisa sent emails and text messages to Daniel and the children which may have raised concerns with the trial court about Marisa's mental state and her portrayal of Daniel to the children when unsupervised. For example, Marisa wrote: "I am asking that you return my children back to me because you are not capable of taking care of them. You abandoned me and the children; therefore stop persecuting God, me and my children. As we move forward to taking the case to Washington D.C. then you will get your day with the President of the U.S." Marisa was unable to explain at trial what she meant by saying that the case would move forward to Washington D.C. and that Daniel would get his day with the President, other than to say that "[a]nything is possible." The theme that Daniel was "persecuting God, [Marisa], and the children," came up repeatedly in Marisa's emails to Daniel, and Marisa likewise testified at trial that she "[a]bsolutely" believed that he was persecuting them. In one instance, Marisa wrote to Daniel: "Your serving and worshiping Satan is really confusing my children." In another, she wrote: "Your moving the location without discussing this with me will be held against you, and your mocking God and persecuting me will end. Satan was defeated and we are still praying for your salvation." Likewise, she wrote: "I serve a BIG GOD and You will answer to Him for what you are doing." In a text to the children, Marisa wrote, "Children spend time with your real father and the best ever. He will bless y'all and he will help y'all. Don't listen to those lies of others. God is your dad."

There also appears to have been some concern regarding Marisa's home life. Marisa testified that she was engaged to a man that she had been dating for 18 months but had not disclosed the engagement to the amicus attorney. The children had never met her fiancé or been told about him. Marisa testified that she had not performed a background check on her fiancé; did not know his social security

12

number; could not contact him by telephone because he was out of the country for several months; and did not have an email address for him despite their having dated for 18 months. In its final order, the trial court found that "based on the evidence at trial and the best interest of the children[,] that good cause [sic] to require disclosure by Marisa Veronica Lawcasey of the social security number, the full name, and date of birth of the individual she identified during the trial of this matter as her fiancé."

The terms of an order restricting a parent's right to possession of or access to a child may not exceed those that are required to protect the best interest of the child. Tex. Fam. Code Ann. § 153.193. The trial court does not abuse its discretion in fashioning restrictions on a parent's possession and access if the record contains evidence to support a finding that such restrictions are in the best interest of the children. *In re H.D.C.*, 474 S.W.3d 758, 764 (Tex. App.—Houston [14th Dist.] 2014, no pet.); *see In re S.A.H.*, 420 S.W.3d 911, 928-29 (Tex. App.— Houston [14th Dist.] 2014, no pet.).

Viewing the evidence presented at trial and discussed above in the light most favorable to the judgment, the trial court could have concluded that restrictions on Marisa's periods of possession and the requirement that visitations remain supervised were in the children's best interest based on (1) Marisa's uncertain mental health state; (2) concern that Marisa would not follow the court's orders to the detriment of the children; or (3) concern that Marisa might damage the children emotionally by demeaning their father when they were alone in her custody.[6]

---

[6] Marisa judicially admitted in her petition to modify the parent-child relationship that the circumstances of the child, a conservator, or other party affected by the order had materially and substantially changed since the rendition date of the divorce decree. *See, e.g.*, *Thornton v. Cash*, No. 14-11-01092-CV, 2013 WL 1683650, at *12 (Tex. App.—Houston [14th Dist.] Apr. 18, 2013, no pet.) (mem. op.) ("Because the Thorntons judicially admitted that a material and substantial change had occurred, they are barred from disputing it on appeal."); *Roach v. Roach*,

Although we acknowledge that supervised visitation is rare in a joint managing conservatorship, it may be appropriate when dictated by the circumstances. *See, e.g.*, *In re A.D.*, 474 S.W.3d 715, 719, 730-31 (Tex. App.—Houston [14th Dist.] 2014, no pet.) (no abuse of discretion where trial court appointed both parents joint managing conservators but ordered mother's visitation be supervised because "trial court was entitled to believe 'the child is in danger of physical and mental harm' in [mother's] care based on the likelihood she will continue her accusations [against the father]"); *In re K.N.C.*, 276 S.W.3d 624, 628 (Tex. App.—Dallas 2008, no pet.) (no abuse of discretion where trial court appointed mother and father as joint managing conservators but ordered father's visitation be supervised because trial court found that father had history of substance abuse, failed to comply with court's order to complete divorce seminar, and children would be in physical or severe emotional danger if father had unsupervised possession and access).[7]

---

735 S.W.2d 479, 482-83 (Tex. App.—Houston [1st Dist.] 1987, no writ) (pleadings contained judicial admission of material and substantial change of circumstances warranting change in joint managing conservatorship).

[7] *But see Blackwell v. Humble*, 241 S.W.3d 707, 718-21 (Tex. App.—Austin 2007, no pet.). In *Blackwell*, the court of appeals noted that "[t]he trial court's denial of Blackwell's possession and its severe restrictions on her access to the children give rise to implied findings that conflict with those arising from her continued status as a joint managing conservator of the children" *Id.* at 720. Although "[t]here was sufficient evidence to support the trial court's decision that some limitations on Blackwell's possession and access would be in the children's best interests," the court of appeals concluded that, "[b]ecause the trial court made no findings of fact and because the implied findings that spring from the court's determinations are in conflict, we are unable to discern what guiding rules and principles the court applied and whether the court appropriately exercised its discretion in denying Blackwell's possession and limiting her access to her children." *Id.* Accordingly, the court of appeals reversed the portion of the judgment restricting the mother's visitation and remanded the case to the trial court for further proceedings. *Id.* at 721.

In *Blackwell*, as here, the party whose possession and access rights were restricted did not request findings of fact regarding the restrictions. *See id.* at 720. We decline to follow *Blackwell* because its approach encourages parties to refrain from requesting findings of fact from the trial court with the hope that any limitations on possession and access will be reversed and remanded for additional hearings. Moreover, such action would constitute a usurpation of the trial court's

We conclude that there exists some evidence of a substantive and probative character to support the trial court's decision. *See Baltzer*, 240 S.W.3d at 475. Accordingly, the trial court did not abuse its discretion by limiting Marisa's periods of possession and ordering that her periods of visitation be supervised.

Marisa's third issue is overruled.

**CONCLUSION**

Having overruled all of Marisa's issues, we affirm the trial court's judgment.

/s/    William J. Boyce
Justice

Panel consists of Chief Justice Frost and Justices Boyce and Wise.

---

function, as the dissenting justice in *Blackwell* noted:

> Notwithstanding Blackwell's failure to request findings of fact, the majority finds these restrictions seemingly inconsistent with the trial court's decision to maintain Blackwell as a managing conservator and concludes that "we are left to speculate" about what the trial court "believed" the evidence to be. These judgments go to the heart of a trial court's discretion, and we may not substitute our judgments for that of the trial court.

*Id.* at 725 (Patterson, J., concurring and dissenting).