**Affirmed in part, Reversed in part, Remanded, and Opinion filed August 6, 2019.**



In the

# Fourteenth Court of Appeals

### NO. 14-18-00015-CV

## IN THE INTEREST OF K.A.M.S. & K.A.S., CHILDREN

**On Appeal from the 311th District Court
Harris County, Texas
Trial Court Cause No. 2006-26052**

### OPINION

Appellant Gilberto Sanchez (Father) appeals from a final order in a suit to modify a parent-child relationship.[1] *See* Tex. Fam. Code Ann. § 109.002 (Supp.). He argues that the trial court abused its discretion when it: (1) appointed appellee Crystal Farrow (Mother) sole managing conservator; (2) modified Father's standard possession order; (3) increased Father's monthly child-support and medical-support

---

[1] This is a SAPCR, *i.e.*, a suit affecting the parent-child relationship. *See* Tex. Fam. Code Ann. § 101.032(a). The 311th District Court of Harris County is the court of continuing, exclusive jurisdiction. *See* Tex. Fam. Code Ann. §§ 155.001 (Supp.), 155.002–.003.

payments; and (4) awarded Mother's attorney her attorney's fees. We conclude that the attorney's-fee award was not supported by legally-sufficient evidence. Therefore, we reverse the portion of the trial court's final order regarding attorney's fees, and remand the case to the trial court for further proceedings limited to Mother's attorney's-fee discovery-sanction claim. We otherwise affirm.

## I. BACKGROUND

*2006 paternity order.* In 2006, Mother filed the original SAPCR, and on December 18, 2006, the trial court signed an order adjudicating Father the parent of two children born to Mother, K.A.M.S. and K.A.S. *See* Tex. Fam. Code Ann. §§ 101.023, 160.636(a). The trial court ordered that Mother and Father have joint-managing conservatorship, Mother has the exclusive right to determine the children's primary residence within Harris County, and Father has standard possession and access. *See* Tex. Fam. Code Ann. §§ 101.016, 101.029, 153.002, 153.134(b), 153.251; Act of Apr. 6, 1995, 74th Leg., R.S., ch. 20, § 1, 1995 Tex. Gen. Laws 113, 147, *amended by* Act of May 12, 2015, 84th Leg., R.S., ch. 117, § 3, 2015 Tex. Gen. Laws 1119, 1120 (current version at Tex. Fam. Code § 153.005(a)(1)). Father was ordered to pay Mother $615.00 per month in child support and to provide the children with health insurance or reimburse Mother for the cost of their insurance. *See* Tex. Fam. Code Ann. §§ 101.015, 154.001(a) (Supp.); Act of May 24, 2001, 77th Leg., R.S., ch. 1023, § 3, 2001 Tex. Gen. Laws 2240, 2240, *amended by* Act of May 27, 2015, 84th Leg., R.S., ch. 1150, § 8, 2015 Tex. Gen. Laws 3868, 3869 (current version at Tex. Fam. Code § 154.008).

*2013 modification order.*[2] On September 18, 2013, the trial court signed an

---

[2] The record does not indicate which party (or parties) filed the 2013 SAPCR to modify the support order and to confirm support arrearages. The record contains an unofficial copy of the resulting order, signed by the attorney of record for the Child Support Division of the Attorney General's Office, by Father, and by Mother's counsel, which was offered by Father and admitted

order that Father pay Mother his child-support and medical-support arrears. *See* Tex. Fam. Code. Ann. § 157.263. The order also modified Father's child-support obligation based on a material and substantial change in circumstances to $440.00 a month, plus $60.00 a month in cash medical support. *See* Tex. Fam. Code Ann. §§ 156.001, 156.402; Act of May 16, 2011, 82nd Leg., R.S., ch. 508, § 3, 2011 Tex. Gen. Laws 1264, 1264, *amended by* Act of May 27, 2015, 84th Leg., R.S., ch. 1150, § 29, 2015 Tex. Gen. Laws 3868, 3875–76 (current version at Tex. Fam. Code § 156.401(a)(1)).

*Current modification suit.* Mother filed the current SAPCR as a modification petition in 2017. Mother requested that she be named sole managing conservator of the children, Father be ordered to pay increased child support and the health-insurance premium for the children, Father have possession of and access to the children at times and dates reached by agreement of the parties, and Father pay reasonable attorney's fees to Mother's attorney. *See* Tex. Fam. Code Ann. §§ 106.002, 156.001, 156.101, 156.402; Act of May 16, 2011, 82nd Leg., R.S., ch. 508, § 3, 2011 Tex. Gen. Laws 1264, 1264 (amended 2015).

Mother filed a motion to compel discovery and for sanctions. The trial court signed an order granting Mother's motion to compel and ordering Father to pay attorney's fees, expenses of discovery, and court costs totaling $2,011.65 to Mother's attorney.

At the bench trial, Mother, Father, and Mother's attorney testified. Before rendering judgment, the trial court interviewed K.A.M.S., then fourteen-years old, and K.A.S., then twelve-years old, in chambers. *See* Tex. Fam. Code. Ann.

---

by the trial court at the hearing on the current SAPCR. Also at the hearing, at Mother's request, the trial took judicial notice of the contents of its entire file, including the modification order it signed on September 18, 2013.

§§ 153.009, 156.101(a)(2). Mother requested a record of this interview, but it is not included in the reporter's record before us. *See* Tex. Fam. Code Ann. § 153.009(f).[3]

The trial court concluded there had been a material and substantial change in circumstances since the 2006 paternity order and that modifying the order was in the best interest of the children. *See* Tex. Fam. Code Ann. §§ 153.002, 156.101(a)(1). The trial court named Mother sole managing conservator and Father possessory conservator. *See* Tex. Fam. Code Ann. §§ 153.005 (Supp.), 153.006. The trial court concluded that a standard possession order was inappropriate or unworkable under the circumstances, a modified possession order was not more restrictive than necessary to protect the best interest of the children, and Father shall have possession at times mutually agreed to in advance by the parties. *See* Tex. Fam. Code Ann. §§ 153.193, 153.252–.253, 153.256.

The trial court also concluded there had been a material and substantial change in circumstances since the 2013 modification order. The trial court concluded that Father was intentionally underemployed, and his actual income was significantly less than his earning potential. *See* Tex. Fam. Code Ann. § 154.066(a). The trial court concluded that Father's potential gross income was $3,333.33 per month, with guideline support at a rate of $500.00 per month.[4] The trial court further concluded that application of the guideline support for Father's potential income was not in the best interest of the children and was unjust or inappropriate under the factors outlined

---

[3] In any event, Father does not contend the children expressed to the trial court anything inconsistent with the trial court's rulings on conservatorship or possession and access. *See* Tex. Fam. Code Ann. § 153.009(a–b).

[4] The trial court stated that it calculated this amount based on Father's net monthly income of $2,542.53 and adjusted net monthly income of $2,410.53, with a guideline rate of 20.63 percent for his two children before the court and two other children not before the court. *See* Tex. Fam. Code Ann. §§ 154.061, 154.129; Office of the Att'y Gen., 2017 Child Support Guidelines Tax Charts, 41 Tex. Reg. 10703–11 (2016).

in Family Code section 154.123(b)(1), (2), (3), (4), (5), (7), (12), (13), (15), and (17). *See* Tex. Fam. Code Ann. §§ 154.122-.123. The trial court therefore set Father's child support at $650.00 per month for both children and $520.00 per month for one child after emancipation of the older child. The trial court ordered Mother to maintain health insurance for the children and Father to reimburse Mother cash medical support of $132.00 per month.

The trial court concluded that reasonable and necessary attorney's fees of $9,800.00 were incurred by Mother in retaining the services of her attorney, including $2,000.00 Father previously was ordered to pay in the order on Mother's motion to compel discovery and for sanctions. The trial court ordered Father to pay Mother's attorney directly.

The trial court signed its final order on January 2, 2018. Father did not request findings of fact or conclusions of law or file a motion for new trial. Father appealed. *See* Tex. Fam. Code Ann. § 109.002 (Supp.).

## II.    ANALYSIS

Trial courts have wide discretion with respect to determining the best interest of a child and over custody, control, possession, support, and visitation matters. *Gillespie v. Gillespie*, 644 S.W.2d 449, 451 (Tex. 1982); *In re A.L.E.*, 279 S.W.3d 424, 427 (Tex. App.—Houston [14th Dist.] 2009, no pet.). We therefore review the trial court's granting of Mother's petition to modify for an abuse of discretion. *See Gillespie*, 644 S.W.2d at 451; *In re A.L.E.*, 279 S.W.3d at 427.

The trial court abuses its discretion when it acts arbitrarily, unreasonably, or without reference to any guiding rules or principles. *Worford v. Stamper*, 801 S.W.2d 108, 109 (Tex. 1990). The trial court does not abuse its discretion if there is some evidence of a substantive and probative character to support its decision. *In re*

*A.L.E.*, 279 S.W.3d at 428; *see Worford*, 801 S.W.2d at 109.

Under this abuse-of-discretion standard, legal and factual sufficiency are not independent grounds of error, but instead are relevant factors to determine if the trial court abused its discretion. *In re A.L.E.*, 279 S.W.3d at 427; *see Beaumont Bank, N.A. v. Buller*, 806 S.W.2d 223, 226 (Tex. 1991). When examining legal sufficiency, we review the entire record, considering evidence favorable to the finding if a reasonable factfinder could and disregarding contrary evidence unless a reasonable factfinder could not. *Gunn v. McCoy*, 554 S.W.3d 645, 658 (Tex. 2018); *In re P.A.C.*, 498 S.W.3d 210, 214 (Tex. App.—Houston [14th Dist.] 2016, pet. denied). We indulge every reasonable inference that would support the challenged finding. *Gunn*, 554 S.W.3d at 658. Evidence is legally sufficient if it would enable reasonable and fair-minded people to reach the decision under review. *Id.*

For a factual-sufficiency review, we examine the entire record and consider evidence favorable and contrary to the challenged finding. *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986) (per curiam); *In re P.A.C.*, 498 S.W.3d at 214. We may set aside the verdict only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Cain*, 709 S.W.2d at 176.

In a bench trial, the trial court is in the best position to observe and assess the witnesses' demeanor and credibility, and "to sense the forces, powers, and influences that may not be apparent from merely reading the record on appeal." *Taylor v. Meek*, 276 S.W.2d 787, 790 (Tex. 1955); *In re A.L.E.*, 279 S.W.3d at 427 (internal quotation marks omitted). As a result, an appellate court defers to a trial court's resolution of underlying facts and to credibility determinations that may have affected its determination, and will not substitute its judgment for that of the trial court. *Walker v. Packer*, 827 S.W.2d 833, 839–40 (Tex. 1992).

## A. Modification of conservatorship and of possession and access

We construe Father's first and second issues as challenging the trial court's discretion in modifying (1) the conservatorship of the parties from joint managing conservators to sole managing conservator (Mother) and possessory conservator (Father)[5] and (2) Father's standard visitation order to possession at times mutually agreed to in advance by the parties. Father acknowledges that "[c]ourts have particularly wide latitude in establishing the specific terms and conditions of visitation and conservatorship." However, according to Father, the trial court's decision "was based on a narrow review of the law, and needs to be reversed." We disagree.

In addressing Father's arguments, we remain mindful that "[t]he best interest of the child shall always be the primary consideration of the court in determining the issues of conservatorship and possession of and access to the child." Tex. Fam. Code Ann. § 153.002. Family Code section 156.101, "Grounds for Modification of Order Establishing Conservatorship or Possession and Access," in pertinent part provides:

> (a) The court may modify an order that provides for the appointment of a conservator of a child, that provides the terms and conditions of conservatorship, or that provides for the possession of or access to a child if modification would be in the best interest of the child and:
>
>> (1) the circumstances of the child, a conservator, or other party affected by the order have materially and substantially changed since the earlier of:
>>
>>> (A) the date of the rendition of the order . . . .

Tex. Fam. Code Ann. § 156.101(a)(1)(A).

The existence of a material and substantial change in circumstances is a threshold determination. *In re A.L.E.*, 279 S.W.3d at 428. In making this

---

[5] In his first issue, Father asks whether the trial court committed "gross error."

determination, the trial court "is not confined to rigid or definite guidelines;" rather, the trial court's determination is fact specific and must be made according to the circumstances as they arise. *Id.* Material changes may include: the marriage of one of the parties, changes in the home surroundings, mistreatment of the child by a party, or a party's becoming an improper person to exercise custody. *See id.* at 428–29. The person seeking the modification has the burden of establishing a material and substantial change by either direct or circumstantial evidence. *Id.* To show that a material and substantial change in circumstances has occurred, the movant must show conditions as they existed at the time the prior order was signed. *Id.* at 429. The movant also must show what material and substantial changes have occurred in the intervening period. *Id.* at 428.

Here, with regard to conservatorship, Mother presented evidence that Father only was "actively a parent" when he and Mother were "actively in a relationship." She testified that in 2006, Father only possessed the children for approximately eight days, did not spend their birthdays with them, and only spent one holiday with them. In 2007, Father attended K.A.M.S.'s birthday party, took the children out of daycare twice to take them to lunch, did not attend K.A.M.S.'s first day of pre-K, only texted Mother for K.A.S.'s second birthday, spent no holidays with the children, and otherwise spent just one day with them. Mother brought the children to Father's family's bakery about six times.

Mother and the children moved to North Carolina in November 2007. Mother accepted a job transfer so she could work full-time to support the children. Even though Mother informed Father that through her employment with an airline she could arrange for Father to "fly free" to come visit the children, he never "took her up on that." Mother and the children flew back to Houston "throughout the year" but only saw Father's parents.

Father left his job as a forklift operator for a grocer-supply company and began working at the bakery in 2007. In 2008 and 2009, Father called Mother from an anonymous number to leave a voicemail for K.A.M.S. on her birthday. In 2010 and 2011, Father had no contact with the children. Once in 2012, the children saw Father at the bakery. In 2013 and 2014, Father had no contact with the children. In 2015, Mother and the children moved back to Houston. In 2015 and 2016, Father had no contact with the children. In September 2017, less than two months before trial, Father began texting Mother asking about the children. Mother offered to bring the children to the bakery to see Father, and he refused.

Father admitted that he never gave Mother his phone number before September 2017 and she had no way to contact him if the children had an emergency. Father did not request visitation. Father did not know and never asked Mother if the children had any medical conditions. He did not know and never asked Mother what schools they attended, or anything about their academics or activities. Father admitted that his failure to communicate with the children potentially had a negative impact on them but he did not "care enough" to reach out to them.

We reject Father's attempts to rely on former Family Code section 156.203(1)(C), which was enacted in 1995 and repealed in 2001.[6] This modification suit instead is governed by section 156.101. *See* Tex. Fam. Code Ann. § 156.101. Father also attempts to rely on *Bingham v. Bingham*, 811 S.W.2d 678 (Tex. App.—

---

[6] The repealed conservatorship modification standard differs significantly from the current statute. *See* Act of May 26, 1995, 74th Leg., R.S., ch. 751, § 48, 1995 Tex. Gen. Laws 3888, 3906 ("The court may replace a joint managing conservatorship with a sole managing conservatorship if: (1) . . . (C) the circumstances of the child or of one or both of the joint managing conservators have so materially and substantially changed since the rendition of the order that it has become unworkable or inappropriate under existing circumstances . . . .") (former Tex. Fam. Code § 156.203(1)(C)), *repealed by* Act of May 22, 2001, 77th Leg., R.S., ch. 1289, § 12(2), 2001 Tex. Gen. Laws 3108, 3111 (repealing in part former Family Code chapter 156, subchapter C).

Fort Worth 1991, no writ). However, *Bingham* predated and did not apply section 156.101.[7] In any event, *Bingham* does not assist Father. There, the trial court did not err by concluding that the parents' joint managing conservatorship had not become unworkable and inappropriate when the record showed the parents had continued to appropriately work with each other as joint managing conservators after their divorce. *Id.* at 683.

Nor do we find persuasive the evidence on which Father relies. Father testified Mother did not send him anything in writing that she moved to North Carolina and claimed he did not know her address until he saw it in the 2013 modification order. Father also notes that Mother testified she did not call the bakery to let Father know when she and the children moved back to Houston in 2015. In addition, Father testified that he had recently reached out to the children via text and he wanted to spend time with them outside his workplace.

Mother, however, testified that she gave Father prior notice about her planned move to North Carolina at a meeting "at the Attorney General's Office in October 2007." At the time Mother and the children moved back in 2015, Father had only seen the children once in over seven years—when Mother initiated a 2012 visit to the bakery on one of the family's trips back to Houston. Mother also testified regarding Father's history of hanging up on her when she called the bakery or Father's telling her to call him back and then being gone or not answering when she returned the call. Moreover, until just before trial Mother had no way to contact Father other than calling the bakery. Father, however, had Mother's phone number.

---

[7] The statute at issue in *Bingham* was former Family Code section 14.081(c). Act of May 26, 1987, 70th Leg., R.S., ch. 744, § 9, 1987 Tex. Gen. Laws 2666, 2671 (former Tex. Fam. Code § 14.081(c)), *amended by* Act of May 28, 1989, 71st Leg., R.S., ch. 371, § 7, 1989 Tex. Gen. Laws 1462, 1465, *repealed by* Act of Apr. 6, 1995, 74th Leg., R.S., ch. 20, § 2(1), 1995 Tex. Gen. Laws 113, 282 (repealing former Family Code title 2).

Further, Mother testified she gave Father's parents the children's numbers as soon as she got the children cell phones in 2012.

Under the applicable standards of review, we conclude there was legally- and factually-sufficient evidence that appointing Mother sole managing conservator was in the children's best interest and there had been a material and substantial change in circumstances since the 2006 paternity order. As the sole judge of the weight and credibility of the evidence, the trial court as factfinder could have reasonably credited Mother's version of events—which essentially reflected that since 2006 she already had been functioning as the children's sole managing conservator. Father has not shown that the trial court abused its discretion in designating Mother sole managing conservator of K.A.M.S. and K.A.S.

We overrule Father's first issue.

With regard to visitation, Father contends that the trial court did not have "enough basis" to modify the standard possession order and therefore abused its discretion. Again, we disagree.

The Family Code provides guidelines for determining the periods of possession for a possessory conservator. *See* Tex. Fam. Code Ann. § 153.192(b). There is a rebuttable presumption that a standard possession order provides a possessory conservator reasonable minimum possession of the child and is in the best interest of the child. Tex. Fam. Code Ann. § 153.252. A trial court has discretion to deviate from a standard possession order but must consider "(1) the age, developmental status, circumstances, needs, and best interest of the child; (2) the circumstances of the managing conservator and of the parent named possessory conservator; and (3) any other relevant factor." Tex. Fam. Code Ann. § 153.256.

An order restricting a parent's right to possession of or access to a child may

not impose restrictions beyond those required to protect the child's best interest. *See* Tex. Fam. Code Ann. § 153.193. A trial court does not abuse its discretion in restricting a parent's possession when the record contains some evidence to support a finding that such restrictions are in the child's best interest. *In re P.A.C.*, 498 S.W.3d at 219.

"In all cases in which possession of a child by a parent is contested and the possession of the child varies from the standard possession order, including a possession order for a child under three years of age, on request by a party, the court shall state in writing the specific reasons for the variance from the standard order." Tex. Fam. Code Ann. § 153.258(a) (Supp.). Here, Father did not request findings. We therefore apply the same standard of review as when a party fails to make a request for findings of fact under Texas Rules of Civil Procedure 296 through 299 and imply all findings necessary to support the trial court's judgment. *See* Tex. Fam. Code Ann. § 153.258(b) (Supp.); *In re P.A.C.*, 498 S.W.3d at 217. Accordingly, we review the record in the light most favorable to the trial court's order and will uphold the order on any legal theory that finds support in the evidence. *In re P.A.C.*, 498 S.W.3d at 217.

Father points to his testimony that he wants to spend time with the children outside the bakery. He "would love" to spend "two, three hours, maybe lunch or whenever they get off school, weekends" with them. He also testified that he was the one sending presents to the children "through" his parents. According to Father, a mutual-agreement visitation arrangement would not work because Mother "doesn't agree on stuff."

The record reflects the following relevant evidence. For almost twelve years, Father exercised almost none of his standard visitation; intentionally did not provide his contact information to Mother ostensibly because she sent him "ridiculous" texts;

12

did not inquire about, much less try to set up visits with, the children; left a couple of voicemails for one child from an anonymous number; and refused to communicate with Mother when she called the bakery. For almost eight years when the children lived out of state, Father had basically no contact with them even though Mother brought the children to see Father's parents at the bakery when she and the children were in town visiting. Father also never tried to visit the children in North Carolina even though Mother assured him that he could fly free to visit them. Mother stated the children only received presents and cards from Father's parents. When pressed about what he allegedly sent the children under the guise of his parents, Father stated "it's been so long" and he "really d[id]n't remember what it was." The trial court reasonably could have concluded that Father never sent the children anything.

The trial court also reasonably could have discounted Father's blanket assertion that Mother "would never agree" to his visitation. To the contrary, there was ample evidence that Mother had been receptive to Father's visitation requests, both in the past and more recently when he was back in contact. Even when Father was not in contact, Mother tried to facilitate visitation by taking the children to the bakery hoping to see him.[8] Moreover, Father understood his lack of communication potentially had an adverse impact on the children. He wanted to "take it slow" in reestablishing a relationship with them "since they haven't seen [him] for so long."

Father further contends that his case is analogous to and should be governed by *Roosth v. Roosth*, 889 S.W.2d 445 (Tex. App.—Houston [14th Dist.] 1994, writ denied), a divorce case in which our court held a trial court abused its discretion in setting a nonstandard possession order. However, *Roosth* involved former Family

---

[8] Mother was receptive to and encouraged the children's relationship with Father's parents. In addition, Mother facilitated the children's relationship with their older half-sibling, a child with whom Father no longer has a parent-child relationship because his parental rights were terminated.

Code section 14.03(d) pertaining to possession and access, which was repealed in 1995.[9] *Roosth* also is distinguishable because it was not a modification suit, and the evidence did not support the trial court's visitation concerns. *See id.* at 452.

Here, we conclude there was legally- and factually-sufficient evidence of a material and substantial change in circumstances and that the almost eleven-year-old standard possession order was not in the children's best interest. Based on the above standards, the trial court reasonably could have concluded that deviating from a standard possession order and setting up Father's visitation at times mutually agreed in advance by the parties was a minimal restriction necessary to protect the children's best interest. Father has not demonstrated that the trial court abused its discretion.

We overrule Father's second issue.

## B. Increased child support and medical support

In his third issue, Father argues that the trial court abused its discretion in modifying his monthly child-support payments without "any basis." We disagree.

The best interest of the child also should be the trial court's primary consideration in determining whether to modify child support. *See* Tex. Fam. Code Ann. § 156.402. At the time, Family Code section 156.401(a)(1)(A) provided that the trial court may modify the prior child-support order if: "the circumstances of the child or a person affected by the order have materially and substantially changed since . . . the date of the order's rendition." Act of May 16, 2011, 82nd Leg., R.S., ch. 508, § 3, 2011 Tex. Gen. Laws 1264, 1264 (amended 2015). In determining

---

[9] *See* Act of Apr. 6, 1995, 74th Leg., R.S., ch. 20, § 2(1), 1995 Tex. Gen. Laws 113, 282; *Roosth*, 889 S.W.2d at 451 ("[Section] 14.03(d) precludes a trial court from denying a parent possession of or access to a child unless the court finds 'that parental possession or access is not in the best interest of the child and that parental possession or access would endanger the physical or emotional welfare of the child.'").

14

whether a modification in child-support payments is appropriate, a trial court should consider the circumstances of the child and the parents at the time of the prior child-support order as compared to the circumstances existing at the time of trial in the modification suit. *See Scruggs v. Linn*, 443 S.W.3d 373, 377 (Tex. App.—Houston [14th Dist.] 2014, no pet.) (applying Family Code section 156.401(a)). A change in conservatorship is a material and substantial change that can be considered in modifying child-support provisions. *In re J.O.A.*, No. 14-14-00968-CV, 2016 WL 1660288, at *9 (Tex. App.—Houston [14th Dist.] Apr. 26, 2016, no pet.) (mem. op.).

Upon a showing of the requisite changed circumstances, the trial court may alter the child-support obligations. *Scruggs*, 443 S.W.3d at 377. The trial court has broad discretion in setting child support, and in increasing or decreasing payments. *See id.* The trial court's child-support decision will not be overturned unless a clear abuse of discretion is shown. *Rodriguez v. Rodriguez*, 860 S.W.2d 414, 415 (Tex. 1993) (citing *Cohen v. Sims*, 830 S.W.2d 285, 288 (Tex. App.—Houston [14th Dist.] 1992, writ denied)).

In determining whether a modification is warranted, the trial court "may consider the child-support guidelines." Tex. Fam. Code Ann. § 156.402(a). The trial court also "may consider other relevant evidence in addition to the factors listed in the guidelines." Tex. Fam. Code Ann. § 156.402(b). The trial court's consideration of the child-support guidelines in a modification proceeding is discretionary, not mandatory. *See Friermood v. Friermood*, 25 S.W.3d 758, 760 (Tex. App.—Houston [14th Dist.] 2000, no pet.) (discussing Family Code section 156.402).

Although child support in line with the guidelines is presumed to be reasonable, "[a] court may determine that the application of the guidelines would be unjust or inappropriate under the circumstances." Tex. Fam. Code Ann. § 154.122. The trial court may order child support outside the guidelines if there is evidence

15

rebutting the presumption that such amount is in the best interest of the child and justifying a variance. Tex. Fam. Code Ann. § 154.123 (outlining relevant factors trial court should consider when determining whether application of guidelines would be unjust or inappropriate).

We already have determined that the trial court did not abuse its discretion with regard to modifying conservatorship. Accordingly, the trial court could modify child support. *See In re C.Z.P.*, No. 14-17-00565-CV, 2019 WL 386048, at *7 (Tex. App.—Houston [14th Dist.] Jan. 31, 2019, no pet.) (mem. op.) ("[T]he reasons justifying the modification of the conservatorship simultaneously operate to justify the modification of child support."); *In re J.O.A.*, 2016 WL 1660288, at *9.

The trial court concluded that Father was intentionally underemployed, with a potential gross monthly income of $3,333.33, net monthly income of $2,542.53, and adjusted net monthly income of $2,410.53. *See* Tex. Fam. Code Ann. §§ 154.061, 154.066(a) ("If the actual income of the obligor is significantly less than what the obligor could earn because of intentional unemployment or underemployment, the court may apply the support guidelines to the earning potential of the obligor."). The trial court used the guideline rate of 20.63 percent when Father had two children before the court and two not before the court and noted that guideline child support would be $500.00 per month. *See* Tex. Fam. Code Ann. § 154.129. The trial court concluded that assessing the guideline monthly amount was not in K.A.M.S.'s and K.A.S.'s best interest and was unjust and inappropriate. *See* Tex. Fam. Code Ann. § 154.122. The trial court cited several factors to justify increasing the monthly amount to $650.00:

- the ages and needs of the children;
- the ability of the parents to contribute to the support of the children;

- any financial resources available for the support of the children;

- the amount of time of possession of and access to children;

- the amount of the obligee's net resources, including earning potential if the actual income is significantly less than what could be earned because of intentional unemployment or underemployment and including an increase or decrease in income or income that may be attributed to property and assets;

- whether either party has managing conservatorship or actual physical custody of another child;

- provision for health care insurance and payment of uninsured medical expenses;

- special or extraordinary educational, health care, or other expenses of the parties or of the children;

- positive or negative cash flow from any real and personal property and assets, including a business and investments; and

- any other reason consistent with the best interest of the child, taking into consideration the circumstances of the parents.

*See* Tex. Fam. Code Ann. § 154.123(b)(1–5), (7), (12–13), (15), (17).

Mother asked the trial court to award more than a standard guideline order of child support because she believed Father is underemployed and because she has "been supporting [the children] above and beyond what a normal order should be." Mother's financial information statement stated that her monthly expenses are $2,859 and her net monthly income is $2,516, leaving a monthly deficit of $343.00. There was no evidence that Mother is underemployed; in fact, she previously transferred jobs to work full-time to support the children. Mother covers "all the expenses related to the" children, including extracurricular activities. The older child who is 14 is involved in many school clubs, including art and anime, while the younger child who is 12 is involved in soccer. Mother has provided for the children's health insurance since the 2013 modification order. Mother also testified that in 2014 the healthcare premium for the children more than doubled from $60 per month to

17

$132 per month. As discussed above, Mother has been functioning as the sole managing conservator and Father rarely exercised any visitation for the majority of the children's lives, especially since the 2013 modification order.

Father acknowledged that Mother has paid and continues to pay all the children's expenses over the $440 he pays in monthly child support and the $60 in monthly cash medical support. There was evidence that Father had been earning $40,000 per year at the grocer-supply company (about $769 per week) and now earns $31,200 per year at the bakery, or about $600 per week—a reduction of 22 percent. According to Father, although he previously made more money, he was not capable of making more money than at the bakery. The only explanation Father provided for quitting his grocer-supply job, which he had held for about seven years, was because Mother allegedly stood outside waiting for him "that day it rained" and therefore he "felt safer" working at the bakery with his parents. Father acknowledged, however, that Mother lived in North Carolina from 2007 to 2015 and he was not "really concerned" that she was going to show up outside his job every day. The trial court could have discounted his explanation and reasonably concluded that Father was intentionally underemployed.

In addition, there was some evidence Father may have access to other financial resources. *See* Tex. Fam. Code Ann. § 154.062(b) (Supp.). Father cosigned the loan for his parents' house so they could "pass the credit" test and admitted that his "name is on the house." Although Father denied he had any ownership interest in the bakery, Father cosigned a $50,000 loan Father's parents took out to purchase commercial baking equipment and start a home business. This home business eventually became the physical bakery. Father claimed that he only earns $2,600 per month but admitted that his monthly expenses including his current amount of child support are about $3,135. Father claimed that he uses his income-tax refund to cover

18

overages. In 2014, Father purchased his own house for $122,000. Father testified he also used his income-tax refund to cover the $11,000 house down payment. There was also evidence Father owns a 2015-model sports-utility vehicle.

Father fails to discuss section 154.123 in his brief, much less challenge all the factors cited by the trial court. He primarily challenges the trial court's determination that he is intentionally underemployed. However, as indicated, the evidence amply supports this finding. Father further contends Mother needed to prove that he reduced his income *for the purpose* of decreasing his child-support payments. However, this "extra proof requirement"—and the cases Father cites in support— was rejected by the Supreme Court of Texas in *Iliff v. Iliff*, 339 S.W.3d 74 (Tex. 2011). *See id.* at 80–81, 83 & n.8 ("There must be a finding that the obligor is intentionally unemployed or underemployed, meaning an obligor consciously chooses to remain unemployed or underemployed. But there is nothing in the statute [section 154.066] requiring further proof of the motive or purpose behind the unemployment or underemployment." (disapproving of, amongst others, *Garner v. Garner*, 200 S.W.3d 303, 306–07 (Tex. App.—Dallas 2006, no pet.), *Gaxiola v. Garcia,* 169 S.W.3d 426, 432 (Tex. App.—El Paso 2005, no pet.), *Zorilla v. Wahid,* 83 S.W.3d 247, 253 (Tex. App.—Corpus Christi 2002, no pet.), and *DuBois v. DuBois,* 956 S.W.2d 607, 610 (Tex. App.—Tyler 1997, no pet.))).

Under the applicable standards, we conclude there was some substantive and probative evidence to support the trial court's variance from the child-support guidelines. Therefore, Father has not shown that the trial court abused its broad discretion when it increased Father's child-support and medical-support obligations.

We overrule Father's third issue.

## C. Attorney's fees

In his fourth issue, Father challenges the attorney's fees awarded to Mother.

To the extent Father appears to argue that Mother did not specifically plead for an award of attorney's fees, we conclude Father did not raise this argument in the trial court and therefore waived it. *See* Tex. R. App. P. 33.1(a); *Tex. Ear Nose & Throat Consultants, PLLC v. Jones*, 470 S.W.3d 67, 86–87 (Tex. App.—Houston [14th Dist.] 2015, no pet.). In any event, in her live petition, Mother expressly requested that Father be ordered to pay her reasonable attorney's fees.

Father primarily argues that Mother did not sufficiently prove the reasonableness of her attorney's fees. Father may raise this insufficiency-of-the-evidence argument for the first time on appeal. *See* Tex. R. Civ. P. 324(a), (b); Tex. R. App. P. 33.1(d); *In re Q.D.T.*, No. 14-09-00696-CV, 2010 WL 4366125, at *9 (Tex. App.—Houston [14th Dist.] Nov. 4, 2010, no pet.) (mem. op.).

Trial courts have broad discretion to award attorney's fees in SAPCRs. *See* Tex. Fam. Code Ann. § 106.002(a); *Lenz v. Lenz*, 79 S.W.3d 10, 21 (Tex. 2002). However, an award of attorney's fees must be supported by evidence that the fees are reasonable and necessary. *See Stewart Title Guar. Co. v. Sterling*, 822 S.W.2d 1, 10 (Tex. 1991); *see also Rohrmoos Venture v. UTSW DVA Healthcare, LLP*, No. 16-0006, 2019 WL 1873428, at *8 (Tex. Apr. 26, 2019) ("When fee-shifting is authorized, whether by statute or contract, the party seeking a fee award must prove the reasonableness and necessity of the requested attorney's fees.").

The Supreme Court of Texas recently explained:

> It should have been clear from our opinions in *El Apple* [*I, Ltd. v. Olivas*, 370 S.W.3d 757 (Tex. 2012)], [*City of Laredo v.*] *Montano*[, 414 S.W.3d 731, 736 (Tex. 2013) (per curiam)], and *Long* [*v. Griffin*, 442 S.W.3d 253, 255 (Tex. 2014) (per curiam),] that we intended the lodestar analysis to apply to any situation in which an objective calculation of reasonable hours worked times a reasonable rate can be employed.

*Rohrmoos Venture*, 2019 WL 1873428, at *20. Generally, while contemporaneous

billing records are not required, legally-sufficient evidence to establish a reasonable and necessary fee needs to include a description of the particular services performed, the identity of each attorney who and approximately when that attorney performed the services, the reasonable amount of time required to perform the services, and the reasonable hourly rate for each attorney performing the services. *See id.* at *20, *22, *23. This base lodestar figure constitutes a presumptively reasonable and necessary fee for prosecuting or defending the prevailing party's claim through the litigation process. *Id.* at *21–*22 (base lodestar accounts for most relevant considerations set forth in *Arthur Andersen & Co. v. Perry Equip. Corp.*, 945 S.W.2d 812, 818 (Tex. 1997), and can be enhanced or reduced accordingly).

Even more recently, the Supreme Court of Texas held that this evidentiary standard of proof is the same for attorney's fees awarded as a fee-shifting sanction. *See Nath v. Tex. Children's Hosp.*, No. 17-0110, 2019 WL 2553538, at *2–*3 (Tex. June 21, 2019) (per curiam) ("Although this case deals with attorney's fees awarded through a sanctions order, the distinction is immaterial because all fee-shifting situations require reasonableness."). In doing so, the *Nath* Court abrogated our precedent, *Allied Associates, Inc. v. INA County Mutual Insurance Cos.*, 803 S.W.2d 799, 799 (Tex. App.—Houston [14th Dist.] 1991, no writ), which had held that proof of reasonableness was not required when attorney's fees were assessed as sanctions.

Father stipulated to Mother's attorney's qualifications. Mother's attorney testified that Mother retained her to litigate the case shortly after Mother filed her initial petition to modify in January 2017. Mother's attorney stated: "Since that time there's been work done by myself, my paralegal, as well as fees and costs involved in the work." Mother's attorney testified to a total of $9,800 in attorney's fees, which she "believe[d] . . . are reasonable and necessary, given the complexity of the case and the issues involved." Mother's attorney stated that such fees included $5,800 for

21

what Mother spent so far in the litigation, as well as $2,000 "on top of that for the time spent in court, the time to prepare for trial, the pretrial last month" and $2,000 "for the fees unpaid by [Father] from the last court's order on the [motion to] compel." Mother's attorney, however, did not further describe the particular tasks performed during her representation of Mother. While there was only one attorney on Mother's case, a paralegal also worked on the case. Mother's attorney did not provide any hourly rate or how many hours she worked prosecuting Mother's modification case. Nor did Mother's attorney provide any billing records.

Without details about the work done, how much time was spent on the tasks, and how she arrived at the total fees in Mother's case, we conclude that Mother's attorney's testimony "lacks the substance required to uphold a fee award" and thus is legally insufficient. *See Nath*, 2019 WL 2553538, at *2; *Rohrmoos Venture*, 2019 WL 1873428, at *25. Therefore, we sustain Father's fourth issue and reverse the order's attorney's-fee award. Because section-106.002 attorney's fees are not mandatory, we cannot remand for a redetermination of those fees.[10] But in light of *Nath*'s recent abrogation of our long-standing attorney's-fee sanction precedent while this appeal was pending, we remand the case to the trial court in the interest of justice for a redetermination of those fees previously awarded against Father as a sanction. *See* Tex. R. App. P. 43.3(b).

---

[10] *Compare Rohrmoos Venture*, 2019 WL 1873428, at *9, *26 (reversing attorney's-fee award and remanding for redetermination when lease provided for mandatory fees to prevailing party), *Jones v. Patterson*, No. 11-17-00112-CV, 2019 WL 2051301, at *10 (Tex. App.—Eastland May 9, 2019, no pet. h.) (mem. op.) (same when attorney's-fee award mandatory under Texas Theft Liability Act, Tex. Civ. Prac. & Rem. Code Ann. § 134.005(b)), *and Sloane v. Goldberg B'Nai B'Rith Towers*, No. 14-17-00557-CV, 2019 WL 2000484, at *9 (Tex. App.—Houston [14th Dist.] May 7, 2019, no pet. h.) (same when Property Code section 24.006 entitled prevailing landlord to attorney's fees), *with In re Q.D.T.*, 2010 WL 4366125, at *10 (modifying order to vacate SAPCR attorney's-fee award).

### III. CONCLUSION

We reverse the portion of the trial court's final order regarding attorney's fees, and remand the case to the trial court for further proceedings limited to Mother's attorney's-fee discovery-sanction claim. We otherwise affirm the trial court's final order as challenged. *See* Tex. R. App. P. 43.2(a), (d).

/s/      Charles A. Spain
           Justice

Panel consists of Justices Wise, Zimmerer, and Spain.